UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------X

JOHN RUIZ,

                  Plaintiff,

   -against-

SAUERLAND EVENT GMBH,

                 Defendant.

--------------------------------X

09 Civ. 3598

OPINION

A P P E A R A N C E S:

        Attorneys for Plaintiff

        JUDD BURSTEIN P.C.
        1790 Broadway, Suite 1501
        New York, NY  10019
        By:  Judd Burstein, Esq.
             Peter B. Schalk, Esq.
             Alexander M. Levy, Esq.

        Attorney for Defendant

        RICHARD SIMON, ESQ.
        39 Lakebridge Drive
        Kings Park, NY  11754

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/18/10

**Sweet, D.J.**

Plaintiff John Ruiz ("Ruiz" or "Plaintiff") has moved
pursuant to Rule 56 of the Federal Rules of Civil Procedure for
summary judgment against Defendant Sauerland Event GmbH
("Sauerland" or "Defendant").  Sauerland has cross moved for
summary judgment to dismiss the complaint of Ruiz.  Based upon
the facts and conclusions set forth below, the motion of Ruiz is
granted, the cross motion of Sauerland is denied, and judgment
will be entered in favor of Ruiz in the amount of $222,225.20
with interest and costs.

**Prior Proceedings**

On December 5, 2008, Ruiz brought suit against
Sauerland in the United States District Court for the Western
District of Washington (the "Washington Case").  Ruiz alleged
that (i) Sauerland breached its obligations under both the World
Boxing Association's ("WBA") World Championship Regulations (the
"WBA Rules") and an agreement between the parties (the "Bout
Agreement") by failing to pay Ruiz his entire $1,053,200 purse
(the same claim that Plaintiff is pursuing in this action); (ii)
Sauerland violated the WBA Rules, and therefore its contractual
obligations to Ruiz, by communicating the score of the bout to

1

the trainer of Nicolai Valuev ("Valuev") between the 11th and
12th rounds of the fight between Ruiz and Valuev for the WBA
Heavyweight Title (the "Ruiz/Valuev Bout"), which allowed the
trainer to use that information to ensure Valuev's victory; and
(iii) Ruiz was a third party beneficiary to a contract between
Sauerland and the WBA, which required Sauerland to abide by the
WBA Rules that Sauerland violated by communicating the score of
the bout to Valuev's trainer between the 11th and 12th rounds.

Ruiz consented to the dismissal of the Washington Case
and the withdrawal of his second and third claims for relief
with prejudice because an arrangement had been worked out for
Ruiz to fight for the championship again.  The first claim for
relief was withdrawn without prejudice.  Ruiz did so pursuant to
an agreement between the parties that the tax issue would be
brought before the United States District Court for the Southern
District of New York and that Sauerland would consent to the
jurisdiction and venue in this Court and waive any claim of
forum non conveniens.

Ruiz commenced this action on April 8, 2009 by filing
a complaint alleging the same first cause of action contained in
his complaint in the Washington Case.

2

The instant motions were heard and marked fully submitted on May 19, 2010.

**Facts**

The material facts are not in dispute, except as noted below, and were contained in Plaintiff's Local Rule 56.1 Statement, Defendant's 56.1/56.2 Statement and the Counter-Statement of Disputed Material Facts Pursuant to Local Civil Rule 56.1 of Ruiz.

Ruiz, a citizen of the United States, is a professional boxer and a former WBA World Heavyweight Champion. Sauerland is a boxing promoter with rights to co-promote the bouts of Valuev.

As of June 2008, Ruslan Chagaev ("Chagaev"), the WBA Heavyweight Champion, was scheduled to defend his title against Valuev on July 5, 2008.  On June 27, 2008, it was announced that Chagaev had injured his back, thereby requiring cancellation of his title defense.  As a result of his injury and pursuant to the WBA Rules, Chagaev was designated as a "Champion in Recess,"

3

and the WBA determined that Ruiz and Valuev should fight for its

Heavyweight Title.


Thereafter, the WBA granted Ruiz's and Valuev's

representatives a period of time to negotiate a contract for the

bout.  When they failed to reach an agreement, the WBA ordered

what is known as a "purse bid," a procedure in which any

promoter registered with the WBA and in good standing can bid

for the right to promote a title fight.  The amount of a purse

bid determines the amounts the two fighters will receive as

"purses," and the highest bid wins.  The WBA ruled that Ruiz and

Valuev should equally share the winning purse bid amount.


Section 15.11 of the then-governing WBA Rules stated

that "[i]t is understood that the licensed winning promoter must

comply with all the regulations established in the WBA Rules."

The WBA Rules provided the following at Rule 15.7(a):

> Amount of the Bidding.  The purse shall be NET
> without any deduction of any kind except for the
> sanction rates which both champion and challenger
> must pay, under the provisions hereof, and such
> deductions will be made by the promoter at a
> later date, when he pays for their purses.

The WBA Rules defined a boxer's "purse" at Rule 14.10:

> The boxer's purse is any amount of money he
> receives, and is entitled to receive, in
> compensation for his services in a Championship

4

> fight. . . . The purse includes the total
> amount due to the boxer, and his assigns,
> creditors and others . . . .

The purse bid went forward on July 21, 2008, and
Sauerland won it with a bid of $2,106,400.  Prior to submitting
its purse bid, Sauerland was advised by the WBA that it
interpreted its "purse bid rules to require a 'net' bid. . . ."
According to Sauerland, prior to submitting its bid, it was not
aware that it should have calculated the personal income taxes
of Ruiz.

After Sauerland won the purse bid, a representative
for Ruiz began negotiating a written contract.  During these
negotiations, Sauerland contended that because the Ruiz/Valuev
Bout was to take place in Germany, it was going to deduct 21.1%
of Ruiz's purse of $1,053,200 as German withholding taxes.

In contrast, Ruiz's representative maintained that the
WBA Rules required that a fighter receive his share of a winning
purse bid "net" of taxes, meaning that Sauerland was responsible
for paying the 21.1% tax on top of paying Ruiz his entire purse
of $1,053,200.

5

Because Sauerland and Ruiz's representative were unable to agree on this issue, the Bout Agreement that Ruiz signed provided that the "German tax issue [is] to be decided by [the] WBA."

On August 20, 2008, the WBA issued a letter to the representatives of Sauerland and Ruiz which (i) held a decision on the tax issue in abeyance; (ii) requested "further information from any party"; (iii) assumed that both parties agreed to reserve their rights "to raise a contractual dispute before the WBA . . . at a later date"; and (iv) held that the "[r]emaining issue can be dealt with at a later time under a claim that a WBA member has failed to comply with the Association's rules."

On August 21, 2008, Sauerland's counsel, Richard Simon ("Simon"), responded with a letter in which Sauerland acknowledged that the parties had submitted their dispute over the alleged German withholding tax to the WBA for resolution. In the letter, Simon wrote that "Mr. Cardinale [an attorney for Ruiz] should confirm that Ruiz's handwritten addition to the contract . . . acknowledged he will accept the withheld tax as a deduction and offset from his gross purse of $1,053,001 [sic]

6

with the parties awaiting a final resolution by the WBA of the ambiguities."

Ruiz and Valuev fought on August 30, 2008. Valuev was declared the winner in a decision that Ruiz considered controversial. After the fight, Sauerland deducted 21.1%, or $222,225.20, from Ruiz's purse. Consistent with their agreement, Sauerland and Ruiz's representative then brought their dispute over the $222,225.20 withholding before the WBA for resolution.[1]

In October 2008, the WBA issued a preliminary ruling in Ruiz's favor. Ruiz and Sauerland subsequently made submissions concerning German and United States income tax statutes and an applicable treaty between Germany and the United States. Sauerland had sought to substantiate its position that the "net" purse rule violated German law by submitting the statutes and treaty, as well as letters from New York accountant

_____

[1]    At one point, Sauerland complained that it had not executed or approved the Bout Agreement signed by Ruiz, containing the handwritten interlineations stating that the WBA would resolve the parties' dispute regarding the alleged tax withholding.  However, Sauerland's agreement that the WBA would resolve the dispute is shown by the admission in Simon's August 21, 2008 letter, Sauerland's submission of various materials to the WBA in the hope that it would rule in its favor on the "net" purse rule, and Sauerland's Answer, which stated that "[t]he parties agreed to submit the issue of the interpretation of its purse bid rule to the WBA."

Steven Falk (the "Falk Letter") and German accountant Olaf
Matthes (the "Matthes Letter").  Ruiz also submitted responsive
comments.

        On November 27, 2008, after considering the parties'
submissions, the WBA issued a final decision (the "WBA
Resolution") reaffirming its preliminary interpretation of the
purse bid rules.  The WBA Resolution provided the following:

>        During the relevant period here the WBA
>        interpreted its purse bid rules to require a
>        "net" bid and that was communicated to the
>        parties at various times prior to purse bid.  WBA
>        Resolution ¶ C(4).
>
>        WBA rules may be superseded by provisions of law
>        applicable to the same subject.  Any party
>        claiming that a national statute or regulation
>        supersedes the applicable WBA rules was afforded
>        the opportunity to submit authoritative evidence
>        of such.  Id. ¶ C(6).

        The WBA did not opine on German law, instead stating
as follows:

>        [T]he WBA does not, and by the parties agreeing
>        to have the matter heard and decided by the WBA,
>        the WBA did not, assume that the parties
>        conferred upon the WBA any additional authority
>        to that which the WBA already had.  Nor does the
>        WBA assume that the actions of the parties
>        effectively designated the WBA as an arbitrator
>        of whether the application of the rules were
>        superseded by the statutes or regulations of any
>        nation.  Id. ¶ B(3).

> This Resolution does not address any issue
> concerning interpretation or the effect of any
> tax laws or regulations of any nation in general,
> or of Germany or the United States in particular,
> or of any international treaties or compacts,
> including any issues of tax credits or offsets.
> Id. ¶ C(2).

> The handwritten interlineations by [plaintiff] in
> his bout contract of the language stating "German
> tax issue to be decided by WBA" did not and does
> not provide the WBA with any authority to
> interpret any such tax laws or regulations, or
> their impact on application of any WBA rule or
> rule interpretation and this resolution is
> limited accordingly.  This resolution is limited
> to the issue of the WBA interpretation of its
> purse bid rule.  Id. ¶ C(3).

> WBA Rules may be superseded by provisions of law
> applicable to the same subject.  Id. ¶ C(6).

The WBA Resolution also addressed Sauerland's

objection that it had not executed or approved the Bout

Agreement, stating that "the WBA assumed that the parties waived

any argument that a bout contract had not been timely supplied

to the Committee and that the WBA would provide further

explication of its interpretation of its rule at its convention

in Punta Cana."  Id. ¶ B(2).

Sauerland never disputed these findings by the WBA.

In its Answer, Sauerland admitted all allegations in Plaintiff's

complaint, with two exceptions.  First, Sauerland disputed

whether the WBA Resolution resolved the German tax issue.
Second, Sauerland contended that under German law, "it doesn't
owe any monies to the plaintiff and hasn't violated its
obligation to the plaintiff" and cited the income tax laws of
Germany and the United States.  (Ans. ¶ 1.)

To date, Sauerland has not presented any evidence to
support its claim with regard to German law other than the tax
laws to which it referred and the letters from two accountants.
Nor has it paid the $222,225.20 due to Ruiz, representing what
Sauerland claims to be Ruiz's German income tax liability.

Sauerland contends that WBA Rule 15.1 allows the
promoter that wins a purse bid to select a date for the
championship bout between 45 and 90 days thereafter at up to
three different locales in three different nations.  Sauerland
also contends that WBA Rule 20.1 (currently Rule 4) confirms
that any WBA Rule is superseded by any applicable provision of
law of any nation or state which is in conflict with the WBA's
interpretation of its conflicted Rule.  According to Ruiz,
Sauerland's contentions in both regards do not accord to the WBA
Rules at all relevant times.

10

**The Summary Judgment Standard**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inference in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (internal citations and quotation marks omitted); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Ruiz and Sauerland disagree on the question of the responsibility to pay the German tax associated with Ruiz's share of the purse bid in order for Ruiz to receive the 50% "net" purse called for by the governing WBA Rules. This issue does not present a dispute of material fact.

11

**Ruiz's Motion for Summary Judgment Is Granted**

The WBA Rules obligate Sauerland to pay a "net" purse, and Ruiz is a third-party beneficiary of Sauerland's obligation to pay a "net" purse.  See Kidder, Peabody & Co. v. Zinsmeyer Trusts P'ship, 41 F.3d 861, 863-64 (2d Cir. 1994).  Sauerland has acknowledged that Rule 15.11 of the then-governing WBA Rules stated that "[i]t is understood that the licensed winning promoter must comply with all the regulations established in the WBA Rules."  (See Def's. 56.1 Stmt. ¶ 11.)  Sauerland has also acknowleged that the WBA Rules required the purse bid to be "NET without any deduction of any kind except for the sanction rates."  (See id. ¶ 12.)

Sauerland has asserted that it "wasn't aware when submitting its purse bid it should have purportedly calculated/accounted for Plaintiff's personal income taxes." (Def's. 56.1 Stmt. ¶ 14; Pl's. 56.1 Stmt. ¶ 14.)

Regardless, prior to submitting its purse bid, Sauerland was advised by the WBA that "the WBA interpreted its purse bid rules to require a 'net' bid."  WBA Resolution ¶ C(4). If Sauerland did not want to be in a position to pay German

12

taxes, it was free to choose a different venue for the fight, or alternatively, to submit a lower bid that accounted for the tax payment, or not bid at all.

Sauerland has admitted that it agreed to submit the parties' dispute over the meaning of the WBA's "net" purse requirement and alleged German withholding tax issue to the WBA for final resolution.

In support of its cross-motion for summary judgment, Sauerland has resubmitted the same two unsworn letters that it submitted to the WBA.  See WBA Resolution ¶ A(9).

The Matthes Letter states that the promoter is required to pay the German withholding tax.  However, while the promoter may have a legal obligation to pay over to the German authorities whatever withholding tax is owed, this does not answer the question of whether the tax is to be deducted from Ruiz's share of the purse or paid by the promoter from its own pocket.  The WBA Resolution's reiteration that the "WBA interpreted its purse bid rules to require a 'net' bid" indicates that Rule 15.7(a) required Sauerland to calculate what the gross purse would be prior to the deduction of German

13

withholding taxes in order to arrive at the "net" purse amount
of $1,053,200, and then to pay that tax separately out of its
own pocket.

The Falk Letter addresses the dollar for dollar tax
credit for any "withholding of foreign tax." The fact that
there may be a tax credit in the United States offsetting taxes
paid in Germany does not speak to the issue of who is
responsible for paying the German tax.

Ruiz has not contended that the tax is not owed or
that Sauerland is not required to pay German withholding tax.
Sauerland is bound by the WBA's ruling that Ruiz should have
been paid his entire "net" purse of $1,053,200, and that it was
Sauerland's obligation to pay whatever German tax is owed in
order to make this possible. See WBA Resolution ¶ C(4).

The rules and regulations of a private organization
are construed by the New York courts as providing contractual
rights and may serve as the basis of a breach of contract
claim. See, e.g., Riko Enters., Inc. v. Seattle Supersonics
Corp., 357 F. Supp. 521, 524 (S.D.N.Y. 1973) ("The NBA
constitution is a contract between the member teams of the

14

NBA."); Desir v. Spano, 687 N.Y.S.2d 411, 411 (App. Div. 1999)

("The constitution and by-laws of an unincorporated association

express the terms of a contract which define the privileges

secured and the duties assumed by those who have become

members."); Giannelli v. St. Vincent's Hosp. & Med. Ctr. of

N.Y., 553 N.Y.S.2d 677, 680 (App. Div. 1990) ("We also conclude

that the medical staff by-laws may form the basis of a claim

for breach of contract or intentional interference with

contractual relations.").


        The facts set forth above establish that Sauerland

breached its agreement to abide by the WBA Resolution, which

held that Sauerland, as the winning promoter of the Ruiz/Valuev

Bout purse bid, had a contractual obligation under the WBA

Rules to pay the fighters "net" purses.  In particular,

pursuant to WBA Rule 15.11, Sauerland bound itself as the

winner of the purse bid to "comply with all the regulations

established in the WBA Rules."  The WBA Rules specifically

required the purse bid to be "NET without any deduction of any

kind except for the sanction rates. . . ."  WBA Rule 15.7(a).

The WBA confirmed that the "net" purse requirement was

"communicated to the parties at various times prior to the

purse bid."  WBA Resolution ¶ C(4).

15

Ruiz is also a third-party beneficiary of Sauerland's contractual obligation to pay a "net" purse.

Sauerland contends that its refusal to pay Ruiz the $222,225.20 owed under the Bout Agreement is justified because the WBA's "net" purse requirement conflicts with German tax law. However, Sauerland has failed to produce evidence showing such a conflict with or violation of German laws.

Ruiz is therefore entitled to summary judgment on his claim for breach of contract. As there is no dispute regarding the amount in issue, i.e., the $222,225.20 withheld plus applicable interest and costs, Ruiz is entitled to judgment in that amount. See Computech Int'l, Inc. v. Compaq Computer Corp., No. 02 Civ. 2628, 2004 WL 2291496, at *5 (S.D.N.Y. Oct. 12, 2004).

**The Sauerland Cross-Motion Is Denied**

Sauerland has contended that the WBA's interpretation of Rule 15.7(a) was erroneous, because Rule 15.7(a) "didn't appear to shift responsibility for payment of the boxers'

16

respective income taxes onto the promoter, as it only clarified
that the total purse bid was to be without deduction for the
boxers' income taxes." (Sauerland Mem. 2.) Sauerland argues
that WBA Rule 14.10 "defines a boxer's 'purse' to include all
the money he receives, and is entitled to receive, including
amounts due his assigns or creditors [i.e. - tax authorities]."

However, the then-governing Rule 15.7(a) resolved this
issue, stating that "[t]he purse shall be NET without any
deduction of any kind except for the sanction rates which both
champion and challenger must pay."

Courts generally defer to a private organization's
interpretation of its rules in the absence of bad faith or
illegality. See M'Baye v. World Boxing Ass'n, 429 F. Supp. 2d
660, 667 (S.D.N.Y. 2006) ("Courts generally are reluctant to
interfere with the internal decisions of organizations such as
the WBA, deferring to the principle that courts are ill-equipped
to resolve conflicts involving the interpretation of the
organization's own rules."); see generally Crouch v. Nat'l Ass'n
for Stock Car Auto Racing, Inc., 845 F.2d 397 (2d Cir. 1988)
(recognizing general principle of judicial non-interference);
Koszela v. Nat'l Ass'n of Stock Car Auto Racing, Inc., 646 F.2d

17

749 (2d Cir. 1981) (same).  Courts in this Circuit have stated
that "a court should not intervene if it simply disagrees with
what it perceives to be an unreasonable application of an
organization's rules, but it may do so in response to legitimate
allegations of bad faith or illegality."  M'Baye, 429 F. Supp.
2d at 668; see Crouch, 845 F.2d at 401.

    The WBA acknowledged that the parties "submitted
extensive documentation in support of their respective positions
concerning responsibility for payment of German withholding
taxes."  WBA Resolution ¶ A(7).  Upon consideration of this
"extensive documentation," the WBA sided with Ruiz, reiterating
that its purse bid rules, at the relevant times, required a
"net" bid, and that it had communicated this requirement to
Sauerland.  See id. ¶ C(4).

    The WBA's interpretation of its own rules is binding
on Sauerland.

**The WBA Resolution Is Entitled to Preclusive Effect
under the Doctrine Of Collateral Estoppel**

    The doctrine of collateral estoppel "give[s]
conclusive effect to the quasi-judicial determinations of

18

administrative agencies, when rendered pursuant to the
adjudicatory authority of an agency to decide cases brought
before its tribunals employing procedures substantially similar
to those used in a court of law." Ryan v. N.Y. Tel. Co., 62
N.Y.2d 494, 49 (1984) (citations omitted). "Such
determinations, when final, become conclusive and binding on the
courts." Id. (brackets omitted); see also Linares v. City of
White Plains, 773 F. Supp. 559, 564 (S.D.N.Y. 1991) (holding
same). Sauerland is barred from attempting to relitigate the
issues already raised and decided by the WBA.

Under New York law, "collateral estoppel applies in a
later proceeding if (i) there is an identity of issue that has
necessarily been determined in the prior proceeding, and (ii)
the party to be estopped had a full and fair opportunity to
litigate the issue in the first proceeding." Bd. of Managers of
195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., 652 F. Supp.
2d 463, 474 (S.D.N.Y. 2009).

The issue of who must pay the German tax was decided
by the WBA when it ruled that Ruiz was entitled to receive a
"net" purse of $1,053,200, rather than a gross purse from which

19

Sauerland could deduct the amount necessary to pay the German withholding tax.  See WBA Resolution ¶ C(4).

In Linares, the Court held that the administrative proceeding at issue in that case was quasi-judicial because the parties to that administrative proceeding were allowed to "submit[] documents, memoranda and affidavits in support" of their respective positions and permitted to respond to the claims of the opposing party.  773 F. Supp. at 564.  Here, Ruiz and Sauerland had ample opportunity to submit documents and arguments before the WBA and were permitted to respond to the claims of the opposing party.  Both parties agreed to have the issue resolved by the WBA.  (See Def's. 56.1 Statement ¶¶ 21, 26, 29, 30; Pl's. 56.1 Statement ¶¶ 21, 26, 29, 30.)

Accordingly, Sauerland is barred by the doctrine of collateral estoppel from relitigating the issue of responsibility for paying withholding taxes, because the WBA has determined that Ruiz is entitled to receive a net purse of $1,053,200.  The responsibility for paying the withholding tax is Sauerland's.  Defendant is collaterally estopped and its cross-motion for summary judgment is denied.

20

## Conclusion

Based upon the facts and conclusions set forth above, Plaintiff's motion for summary judgment on his claim for breach of contract in the amount of $222,225.20, plus interest and costs, is granted, and Defendant's cross-motion for summary judgment is denied.

Submit judgment on notice.

It is so ordered.

New York, NY
August /7 , 2010

ROBERT W. SWEET
U.S.D.J.

21